UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

PAUL WESTLEY, individually
and on behalf of similarly situated
persons,

                Plaintiffs,

v                                                 Case No. 18-13627
                                                 Honorable Thomas L. Ludington
CCK PIZZA COMPANY, LLC
and CHRIS SCHLOEMANN,

                Defendants.
_____/

**ORDER GRANTING PLAINTIFF'S MOTION FOR FLSA CONDITIONAL CERTIFICATION AND NOTICE AND GRANTING DEFENDANTS' MOTION TO FILE SUR-REPLY AND DIRECTING ITS FILING**

On November 20, 2018, Plaintiff Paul Westley filed a complaint against Defendants CCK Pizza Company, LLC and Chris Schloemann. ECF No. 1. Plaintiff alleges that Defendants have failed to adequately reimburse Defendants' employees for their labor in violation of the Fair Labor Standards Act ("FLSA") and the Michigan Wage Law. *Id.*

On January 31, 2019, Plaintiff filed a motion for Conditional Certification and Notice pursuant to the FLSA. ECF No. 13. On May 24, 2019, Defendants filed a motion to file sur-reply relating to Plaintiff's motion for FLSA certification and notice. ECF No. 30. For the following reasons, the motions will be granted.

**I.**

**A.**

According to Plaintiff's Amended Complaint,[1] Defendants CCK Pizza Company ("CCK") and Chris Schloemann own and operate numerous Domino's pizza franchise stores.[2] PageID.351. Schloemann is an owner, officer and director of CCK. *Id.* While in this capacity, Schloemann implemented the pay rate at issue and has overseen and enforced CCK's pay practices. *Id.*

Defendants' Domino's stores employ delivery drivers primarily to deliver food items to customers. PageID.352. Defendants require their drivers to maintain and pay for safe, legally-operable, and insured automobiles when delivering the food items. *Id.* The drivers incur costs for gasoline, vehicle parts and fluids, repair and maintenance services, insurance, depreciation, and other expenses while delivering the food items. *Id.*

All of Defendants' delivery drivers were subject to reimbursement for these costs. PageID.355. Since November 20, 2015,[3] Defendants have utilized various methods of reimbursement to account for these expenses. PageID.352. Plaintiffs allege that none of Defendants' methods have adequately reimbursed the actual vehicle expenses incurred by the delivery drivers. *Id.* Plaintiffs therefore allege that Defendants have a flawed reimbursement policy that has resulted in the under reimbursement of all of Defendants' delivery drivers' actual automobile expenses. *Id.* As a result of the flawed reimbursement policy, the drivers' net wages were allegedly diminished beneath the federal minimum wage requirements as required in the FLSA. PageID.354.

While employed as a delivery driver with Defendants, Plaintiff was paid a cash wage of $5.75 per hour, plus a tip credit.[4] *Id.* The federal minimum wage throughout the duration of

---

[1] Plaintiff's Amended Complaint was filed on May 9, 2019. ECF No. 19.
[2] Defendants state in their answer that CCK owns four Domino's franchise stores. PageID.39.
[3] Plaintiff alleges a "willful" violation of the FLSA. PageID.356. The statute of limitations period is three years prior to the date of the complaint's filing for a plaintiff alleging a willful violation of the FLSA. 29 U.S.C. § 255(a).
[4] Plaintiff states in his reply brief that it is "undisputed that Defendants never claimed a tip credit greater than the difference between the drivers' cash wage and the applicable minimum wage." PageID.568-69.

Plaintiff's employment by Defendants was $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). During Plaintiff's employment period, he was reimbursed at various rates, with a minimum reimbursement of $.29 per mile. PageID.355. Also during Plaintiff's employment period, the IRS business mileage rate ranged between $.535 and $.56 per mile. *Id.* The IRS mileage rate provides optional "standard mileage rates for taxpayers to use in computing the deductible costs of operating an automobile for business, charitable, medical, or moving expense purposes." PageID.537. Using the IRS data as a reasonable approximation of Plaintiff's automobile expenses, every mile driven by Plaintiff allegedly decreased his net wages by at least $.245 per mile, or by $.735 per hour. PageID.355. Plaintiff contends that this decrease in net wages diminished his wages beneath the federal minimum wage. PageID.354.

All of Defendants' delivery drivers allegedly shared similar experiences to those of the Plaintiff: drivers were "subject to the same reimbursement policy; received similar reimbursements; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the federal minimum wage before deducting unreimbursed business expenses." PageID.355. During the entire FLSA statutory period, the IRS business mileage reimbursement rate ranged between $.535 and $.575 per mile. PageID.352. Similarly, companies, like AAA, tasked with studying the cost of owning and operating a vehicle have determined that the average cost doing so ranged between $.571 and $.608 during the statutory period. PageID.352-53. Both figures represent a reasonable approximation of the average cost of owning and operating a vehicle to use for delivering food items. PageID.353. Therefore, the Defendants allegedly failed to reimburse their delivery drivers at a reasonable approximation of the cost of owning and operating a vehicle for the purpose of delivering food items. *Id.*

Defendants' low reimbursement rates allegedly were a frequent complaint of delivery drivers, some of whom discussed their concerns with management. PageID.356. However, Defendants continued to reimburse their delivery drivers at a rate lower than the reasonable approximation of automobile expenses, as determined by the data above. *Id.*

**B.**

Plaintiff's amended complaint presents two counts. Count I alleges that Defendants violated the federal minimum wage as mandated by the Fair Labor Standards Act. PageID.362-65. Count II states that Defendants violated Michigan's minimum wage as mandated by the Michigan Minimum Wage Law. PageID.365-66.

**II.**

Plaintiff seeks conditional class certification and judicial notice of a collective action pursuant to the Fair Labor Standards Act, 29 U.S.C. § 216(b). § 216(b) provides that "an employer who violates the provisions of section 206 or section 207 of this title shall be liable to the employee or employees affected in the amount of their unpaid wages . . . ."[5] *Id.*

Section 216 further provides that an employee may maintain an action against his employer on behalf of himself and other employees who 1) are "similarly situated", and 2) "consent in writing" to be a part of the collective action. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006) (quoting 29 U.S.C. § 216(b)). If the plaintiff shows that he is similarly situated to the other potential plaintiffs, a court may conditionally certify the collective action by authorizing notice of the action to the potential plaintiffs that seeks their requisite consent to opt into the action.

---

[5] 29 U.S.C. § 206(a)(1)(C) provides that employees have been entitled to compensation at a rate of at least $7.25 per hour since July 24, 2009.

*Fisher v. Mich. Bell Telephone Co.*, 665 F. Supp. 2d 819, 824-25 (citing *Hoffmann-LaRoche, Inc. v. Sperling*, 493 U.S. 165, 167-68 (1989)).

Whether the proposed class members are similarly situated is analyzed in two stages. The first stage, also called the "notice stage," takes place "at the beginning of discovery." *Comer*, 454 F.3d at 546. At this stage, the plaintiff "must show only that his position is similar, not identical" to the positions of the other potential plaintiffs to the action. *Id.* The plaintiff need only make a "modest factual showing" or make "substantial allegations" that he and the other potential plaintiffs were "victims of a common policy or plan that violated the law." *White v. MPW Industrial Services, Inc.*, 236 F.R.D. 363, 372 (E.D. Tenn. 2006). The courts employ a "fairly lenient standard" when deciding whether plaintiffs are similarly situated. *Comer*, 454 F.3d at 547. Plaintiff is seeking conditional certification at this first stage.

The second stage of certification occurs post-discovery. *Id.* At this stage, the courts employ a "stricter standard" to reexamine whether plaintiffs to the action are similarly situated by evaluating the plaintiffs' factual differences. *Id.* Using this evidence, the courts will decide whether to finalize the conditional certification obtained in the first stage or, alternatively, decertify the class. *See Id.* at 546.

## III.

Plaintiff seeks conditional certification of "[a]ll delivery drivers employed by Defendants at any time since November 20, 2015" for his claim that Defendants' reimbursement policy diminishes their delivery drivers' wages beneath the federal minimum wage as mandated in the FLSA. PageID.83.

## A.

A preliminary issue is whether the delivery drivers for whom Plaintiff seeks conditional certification are classified as independent contractors or employees of the Defendants.

"Independent contractors do not enjoy FLSA protections." *Keller v. Miri Microsystems LLC*, 781 F.3d 799, 806 (6th Cir. 2015).

Defendants admit in their answer to Plaintiff's complaint that CCK "employs delivery drivers who use their own automobiles to deliver pizza and other food items to the customers of Defendant CCK Pizza Company, LLC." PageID.35. Further, neither party alleges that Defendants' delivery drivers ever worked under an independent contractor agreement and Defendants do not contest the provisions of the declarations of Plaintiff, Ema Westley, and Jeffrey Bourcier that state they "worked for the Defendants" and were "employed as a delivery driver." *See* PageID.249; PageID.724; PageID.727.

Accordingly, the delivery drivers are assumed employees of Defendants and enjoy FLSA protections.

**B.**

Plaintiff first contends that he was paid a subminimum wage because Defendants' reimbursement rates for delivery drivers did not cover all of Plaintiff's incurred vehicle expenses. PageID.95. Plaintiff cites the difference between the IRS business mileage reimbursement rate and his actual reimbursement rate, as well as his allegation that he was paid at or near the minimum wage, as evidence that Defendants diminished his wages beneath the federal minimum wage. PageID.94-95.

Defendants contend that the IRS rate is insufficient to show that their reimbursement policy violates the FLSA and therefore that "Plaintiff has failed to allege even a facially valid FLSA violation, let alone a modest factual showing of an FLSA violation." PageID.451. However, this district has recognized that the court does not "decide substantive issues on the merits" until the second stage of certification. *Fisher*, 665 F. Supp 2d at 825 (citing *Brasfield v. Source Broadband Servs., LLC*, 257 F.R.D. 641, 642 (W.D. Tenn. 2009)). Therefore, whether the IRS's

reimbursement rate adequately reflects the Plaintiff's actual cost for operating and maintaining a vehicle is not considered at this stage of certification.

The current issue is solely whether Plaintiff is in a similarly situated position as the potential plaintiffs with respect to the Defendants' allegedly flawed and undercompensating reimbursement policy.

**C.**

Plaintiff argues that he fulfills the lenient standard for establishing that all delivery drivers employed by Defendants are similarly situated for purposes of § 216(b) conditional certification and notification. PageID.98-101.

**1.**

Plaintiff contends that he is similarly situated to all other delivery drivers employed by Defendants during the statutory period because they "held the same job, shared the same primary job duty of delivering food using their personal vehicles, were required to incur automobile costs in delivering food to Defendants' customers, and were reimbursed according to Defendants' uniform policy." PageID.98.

Defendants acknowledge that all delivery drivers were subject to reimbursement. PageID.47. However, Defendants maintain that potential plaintiffs are not united by a common decision, policy or plan, and thus are not similarly situated to the plaintiff, because "different CCK drivers were subject to up to three different policies at different times and at different stores." PageID.453.

Plaintiff argues that the reimbursement methods employed by Defendant are only secondary to a uniformly "flawed" reimbursement system, regardless of methodology. PageID.565. To support his allegation that all delivery drivers, regardless of method, were subject to a flawed reimbursement policy that diminished their wages below the federal minimum wage,

Plaintiff has provided his declaration as well as declarations of three former delivery drivers employed by Defendants. The declarations state that the reimbursements received were inadequate to reimburse them for the automobile expenses incurred while delivering food for Defendants, as determined by the IRS's reasonable approximation of automobile expenses.

The question before the Court is whether Plaintiff has submitted enough evidence to make a modest factual showing or substantial allegation that he and the potential plaintiffs are similarly situated by unity of a common plan in violation of the FLSA. Plaintiff has met this burden, despite differences in the methods of reimbursement dependent on each driver's date of employment and store.

Plaintiff states in his declaration that Domino's per mile reimbursement rate was less than the IRS reimbursement rate. PageID.250. Furthermore, Plaintiff also states that Domino's mileage reimbursement rate based on six percent of gross sales for deliveries was less than the IRS reimbursement rate when accounting for miles driven. *Id.* Plaintiff concludes that Domino's reimbursement rates did not cover all expenses incurred while delivering food items for the Defendants' Bay City, Michigan location. *Id.* Plaintiff further concludes that "based on conversations with other drivers with whom [he] worked while employed by Defendants," these workers "were subjected to the same inadequate reimbursement policy." *Id.*

Ema Westley, Plaintiff's wife and a current delivery driver for Domino's at the Defendants' Bay City location, states the same allegations and conclusions as Plaintiff regarding reimbursement in accordance with Defendants' per mile method. PageID.728. E. Westley does not make any allegations with respect to the Defendants' percentage of gross sales reimbursement method.

Jeffrey Bourcier, a former delivery driver for Domino's at the Defendants' Midland, Michigan location, states in his declaration that Domino's flat rate reimbursement of at least $.75

per delivery was less than the IRS reimbursement rate when accounting for miles driven. PageID.725. Bourcier concludes that Domino's reimbursement rates did not cover all expenses incurred while delivering food items for the Defendants' Midland location. *Id.* Bourcier further concludes that "based on conversations with other drivers with whom [he] worked while employed by Defendants," these workers "were subjected to the same inadequate reimbursement policy." *Id.*

Defendants attached an affidavit to their sur-reply contesting Bourcier's declaration that he was employed by the Defendants within the statutory period. PageID.756-63. However, at this conditional first stage of certification, "the Court does not resolve factual disputes, decide substantive issues on the merits, or make credibility determinations." *Fisher*, 665 F. Supp. 2d at 826. Therefore, Defendants' evidence challenging the validity of Bourcier's declaration will be addressed during the second stage of certification.

The declarations collectively provide substantial allegations that all three methodologies used by Defendants to reimburse delivery drivers undercompensated actual automobile expenses incurred. Moreover, Defendants acknowledge that all delivery drivers were subject to one of the three reimbursement methods and the declarations allege that other Domino's employees worked under the same subminimum wage, plus tip credit, policy. Therefore, Plaintiff has carried his burden of showing a similarly situated class at this lenient first stage of certification.

**2.**

Defendants further argue that Plaintiff has not made a modest factual showing that his vehicle expenses are similar to the proposed collective. PageID.458-59. Defendants state that Plaintiff has not provided any facts that his "vehicle expenses relating to gas use, vehicle depreciation, insurance rates, and other vehicle expenses are similar to the proposed collective." PageID.459. However, "disparate factual and employment settings of the individual plaintiffs should be considered at the second stage of analysis." *Fisher*, 665 F. Supp. 2d at 827. Plaintiff has

established that the collective class is sufficiently similarly situated to proceed to discovery because the drivers are all subject to an allegedly inadequate reimbursement rate regardless of method used (see III.C.1). At this first lenient stage, conditionally certifying the class would not impose a burdensome factual inquiry on the Court because all delivery drivers were subject to reimbursement and no exceptions to the policy are alleged.

## IV.

If the plaintiff shows that other potential plaintiffs are similarly situated, a court may conditionally certify the collective action by authorizing notice of the action to the potential plaintiffs that seeks their requisite consent to opt into the action. *Fisher*, 665 F. Supp. 2d at 824-25 (citing *Hoffmann*, 493 U.S. at 167-68).

Defendants do not contest Plaintiff's requests to 1) order Defendants to identify all delivery drivers they have employed at any time since November 20, 2015; 2) order Defendants to provide to Plaintiff's attorneys the names, last known mailing and e-mail addresses, and telephone numbers for all collective members, within ten business days of the date of an Order granting this motion; and 3) direct the issuance of Plaintiff's proposed notice and consent form to all such persons. PageID.105.

Plaintiff's proposed Notice is approved in the form provided by Plaintiff. PageID.259-63. Further, notification of all delivery drivers employed by Defendants at any time since November 20, 2015 is authorized in accordance with granting Plaintiff's motion for conditional certification. Defendants are therefore required to provide to Plaintiff's attorneys the contact information of each delivery driver employed by Defendants since November 20, 2015 within ten business days of the date of this Order. Plaintiff may send by First Class Mail, email, or both the Notice to all potential plaintiffs of the conditionally certified class.

After Defendants have produced collective members' names and contact information, and Plaintiff has issued the Notice, collective members are given a 90-day period to return a signed consent form. The proposed 90-day notice and opt-in provision is consistent with this district's timeframe for authorizing contact of potential plaintiffs by postal mail, email, or both. *Benion v. LeCom, Inc.*, 2016 U.S. Dist. LEXIS 63210, at 35 (E.D. Mich. May 13, 2016).

Lastly, Plaintiff proposes that a "reminder" notice be sent 45 days prior to the close of the 90-day opt-in period. Plaintiff may send a reminder notice through the same means it served the Notice to all potential plaintiffs of the conditionally certified class that have not opted in to the litigation at the time the reminder notice is sent. *See Hamm v. S. Ohio Med. Ctr.*, 275 F. Supp. 3d 863, 879 (S.D. Ohio 2017).

**V.**

Accordingly, it is **ORDERED** that Plaintiff's motion for FLSA conditional certification, ECF No. 13, as a collective is **GRANTED**.

It is further **ORDERED** that Defendants must provide to Plaintiff's attorneys the names, last known mailing and email addresses, and telephone numbers of the potential plaintiffs of the conditionally certified class **on or before June 27, 2019**.

It is further **ORDERED** that Plaintiff shall deliver notice by First Class Mail, email, or both to conditionally certified class members. The Notice shall state that interested class members may opt in to this litigation **on or before September 25, 2019**.

It is further **ORDERED** that Defendants' motion to file sur-reply, ECF No. 30, is **GRANTED**. Defendants are **DIRECTED** to file the sur-reply, ECF No. 30-2, upon receipt of this Order.

Dated: June 4, 2019   s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge