UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

PAUL WESTLEY, individually
and on behalf of similarly situated
persons,

    Plaintiff,                                           Case No. 18-13627

v.                                                    Honorable Thomas L. Ludington

CCK PIZZA COMPANY, LLC
and CHRIS SCHLOEMANN,

    Defendant.
_____/

## ORDER GRANTING MOTION TO COMPEL DEPOSITIONS AND DENYING EXPENSES INCLUDING ATTORNEY'S FEES

On November 20, 2018, Plaintiff Paul Westley filed a complaint against Defendants CCK Pizza Company, LLC and Chris Schloemann. ECF No. 1. Plaintiff alleges that Defendants have failed to adequately reimburse Defendants' employees for their labor in violation of the Fair Labor Standards Act ("FLSA") and the Michigan Wage Law. *Id*.

On Jan 31, 2019, Plaintiff filled a motion for conditional certification. On June 4, 2019, the motion was granted based on Plaintiff's showing that potential plaintiffs were sufficiently similarly situated for conditional class certification. In total thirteen additional Plaintiffs have opted into the class. ECF No. 4, 21, 22, 41, and 43.

On July 1, 2019, Defendants filed a motion to compel the depositions of the named Plaintiff Paul Westley and six opt-in Plaintiffs: (1) Emajean Westley, (2) Jeffrey Bourcier, (3) James

Sheufelt, (4) Emily Reilly, (5) Bryan Stevens, and (6) Joshua Heinz.[1] ECF No. 37. For the following reasons the motion will be granted.

I.

According to Plaintiff's Amended Complaint, Defendants CCK Pizza Company ("CCK") and Chris Schloemann own and operate numerous Domino's Pizza franchise stores.[2] ECF No. 19 at PageID.351. Schloemann is an owner, officer and director of CCK. *Id.* While in this capacity, Schloemann implemented the pay rate at issue and has overseen and enforced CCK's pay practices. *Id.* Defendants' Domino's stores employ delivery drivers primarily to deliver food items to customers. *Id.* at PageID.352. Defendants require their drivers to maintain and pay for safe, legally operable, and insured automobiles when delivering the food items. *Id.* The drivers incur costs for gasoline, vehicle parts and fluids, repair and maintenance services, insurance, depreciation, and other expenses while delivering the food items. *Id.*

All of Defendants' delivery drivers were subject to reimbursement for these costs. *Id.* at PageID.355. Since November 20, 2015, Defendants have utilized various methods of reimbursement to account for these expenses. *Id.* at PageID.352. Plaintiff alleges that none of Defendants' methods have adequately reimbursed the actual vehicle expenses incurred by the delivery drivers. *Id.* Accordingly, Plaintiff alleges that Defendants have a flawed reimbursement policy that has resulted in the "under-reimbursement" of all of Defendants' delivery drivers' actual automobile expenses. *Id.* As a result of the flawed reimbursement policy, the drivers' net wages were allegedly diminished beneath the federal minimum wage requirements as required in the FLSA. *Id.* PageID.354.

While employed as a delivery driver with Defendants, Plaintiff was paid a cash wage of

---

[1] These were the only opt-in Plaintiffs at the time that Defendant filed motion to compel.
[2] Defendants state in their answer that CCK owns four Domino's franchise stores. PageID.39.

$5.75 per hour, plus a tip credit. *Id.* The federal minimum wage throughout the duration of Plaintiff's employment by Defendants was $7.25 per hour. 29 U.S.C. § 206(a)(1)(C). During Plaintiff's employment period, he was reimbursed at various rates, with a minimum reimbursement of $.29 per mile. *Id.* at PageID.355. During Plaintiff's employment period, the IRS business mileage rate ranged between $.535 and $.56 per mile. *Id.* The IRS mileage rate provides optional "standard mileage rates for taxpayers to use in computing the deductible costs of operating an automobile for business, charitable, medical, or moving expense purposes." *Id.* PageID.537. Using the IRS data as a reasonable approximation of Plaintiff's automobile expenses, every mile driven by Plaintiff allegedly decreased his net wages by at least $.245 per mile, or by $.735 per hour. PageID.355. Plaintiff contends that this decrease in net wages diminished his wages beneath the federal minimum wage. *Id.* at PageID.354.

All of Defendants' delivery drivers allegedly shared similar experiences to those of the Plaintiff: drivers were "subject to the same reimbursement policy; received similar reimbursements; incurred similar automobile expenses; completed deliveries of similar distances and at similar frequencies; and were paid at or near the federal minimum wage before deducting unreimbursed business expenses." *Id.* at PageID.355. During the entire FLSA statutory period, the IRS business mileage reimbursement rate ranged between $.535 and $.575 per mile. *Id.* at PageID.352. Similarly, companies, like AAA, tasked with studying the cost of owning and operating a vehicle have determined that the average cost of doing so ranged between $.571 and $.608 during the statutory period. *Id.* at PageID.352-53. Both figures represent a reasonable approximation of the average cost of owning and operating a vehicle to use for delivering food items. *Id.* at PageID.353. Therefore, the Defendants allegedly failed to reimburse their delivery drivers at a reasonable approximation of the cost of owning and operating a vehicle for the purpose

of delivering food items. *Id.* Defendants' low reimbursement rates allegedly were a frequent complaint of delivery drivers, some of whom discussed their concerns with management. *Id.* at PageID.356. However, Defendants continued to reimburse their delivery drivers at a rate lower than the reasonable approximation of automobile expenses, as determined by the data above. *Id.*

Plaintiff's amended complaint presents two counts. Count I alleges that Defendants violated the federal minimum wage as mandated by the Fair Labor Standards Act. PageID.362-65. Count II alleges that Defendants violated Michigan's minimum wage as mandated by the Michigan Minimum Wage Law. PageID.365-66.

**II.**

Defendants seek an order compelling depositions from Plaintiff Paul Westley and opt-in Plaintiffs pursuant to Fed. R. Civ. P. 37(a). Rule 37(a) provides:

> On notice to other parties and all affected persons, a party may move for an order compelling disclosure or discovery. The motion must include a certification that the movant has in good faith conferred or attempted to confer with the person or party failing to make disclosure or discovery in an effort to obtain it without court action.

**III.**

**A.**

A party seeking an order to compel discovery or disclosure under Fed. R. Civ. P. 37(a) must certify that they have worked in "good faith" with the other party toward the desired disclosure or discovery prior to seeking court intervention. Local Rule 37.1 gives guidance as to the meaning of a "good faith" effort to resolve discovery issues without court intervention. It provides that counsel "shall confer in…a good faith effort" to resolve the issues and that Local Rule 7.1 applies to motions to compel. Local Rule 7.1(a) requires that a movant affirm in its motion or attached memorandum that a conference has occurred between opposing parties and that there was no concurrence regarding the relief being sought. This court has held that satisfying Local

Rule 7.1 and 37.1 fulfills the good faith requirement of F. Civ. P. R. 37(a). *See William Beaumont Hosp. v. Medtronic, Inc.*, No. 09-CV-11941, 2010 WL 2534207, at *5 (E.D. Mich. June 18, 2010) (holding that an email exchange between parties fulfilled the good faith requirement of Rule 37 and Local Rule 37.1); *Atifah v. Union Sec. Ins. Co.*, No. 08-10042, 2008 WL 2714459, at *1 (E.D. Mich. July 8, 2008); see generally *Dixon v. Ford Motor Co.*, No. 5:16-CV-14124, 2018 WL 7048327, at *1 (E.D. Mich. June 5, 2018).

Defendants state that they have made "multiple written requests to Plaintiffs' counsel" seeking to set dates for the deposition of Plaintiffs, as well a meet-and-confer on the topic of depositions with Defendants. *Id.* at PageID.809-10. Plaintiff contends that Defendants "have neither served discovery requests nor noticed any depositions." ECF No. 42 at PageID.836 (emphasis omitted). Plaintiff argues that Defendants' motion to compel is premature, when Defendant has "neither served discovery requests nor noticed any depositions." EFC No. 42 at PageID.836-37. This argument is unpersuasive. F. Civ. P. R. 37(a), as discussed above, only requires a showing of good faith in seeking discovery. Defendants' motion to compel depositions includes a statement[3] that meets Local Rules 7.1 and 31.1 good faith requirement. Accordingly, the good faith requirements of F. Civ. P. R. 37(a) are fulfilled. ECF No. 37 at PageID.810.

**B.**

Typically, collective FLSA actions proceed as a two-tiered inquiry; Phase One occurs "before discovery" and involves conditionally certifying the class. *Comer v. Wal-Mart Stores, Inc.*, 454 F.3d 544, 546 (6th Cir. 2006). Phase Two occurs at the end of discovery when the court has had the opportunity to analyze class certification more closely. *Id.* According to the Parties'

---

[3] Statement fulfilling Local Rule 7.1 and 37.1: "Defendants have requested concurrence in the relief requested, including conducting a meet-and-confer prompted by undersigned; the parties cannot resolve this dispute without Court intervention after exhausting all reasonable efforts to do so." ECF No. 37 at PageID.810.

Stipulated Scheduling Order, Phase One discovery ends on August 1, 2019 and includes only discovery related to "issues of class certification." ECF No. 20 at PageID.373. The Stipulated Scheduling Order further sets May 8, 2020 as the final deadline for Phase Two discovery, which "include[s] all class-wide discovery." *Id*.

Defendants explain that they seek Plaintiffs' depositions for the purposes of "determin[ing] the merits of Plaintiff's theory of liability as well as whether final certification should be granted." ECF No. 37 at PageID.816. Plaintiff contends that Defendants' motion to compel is "premature" because the "stated intent" is "to engage in second-stage merits discovery *during the opt-in period*." ECF No. 42 at PageID.836 (emphasis added). However, Phase One discovery ended on August 1, 2019. The opt-in period ends on September 25, 2019. Accordingly, the beginning of Phase Two discovery and the end of the opt-in period overlap.

Pursuant to F. Civ. P. R. 26(d), it is within the Court's discretion to make decisions regarding the timing of discovery. Furthermore, this Court has allowed the taking of depositions in other FLSA cases prior to the cutoff deadline for new opt-ins. *Lee v. GAB Telecom, Inc.*, No. 12-CV-14104, 2013 WL 4041875, at *2 (E.D. Mich. Aug. 8, 2013). Accordingly, depositions prior to the close of the opt-in period will be permitted.

Plaintiff further argues that depositions would discourage new opt-in plaintiffs from joining the class. ECF No. 42 at PageID.842. Potential opt-in plaintiffs were sent notice of the present action. *See* ECF 13-24. The notice did not include any language that opt-in plaintiffs might be subject to depositions. However, depositions are a regular and common discovery tool. In becoming party to a lawsuit, potential opt-in plaintiffs are expected to participate in reasonable discovery, pursuant to F. R. Civ. P. 26.

Finally, Plaintiff argues that granting this motion would be unduly burdensome. *See* F. Civ. P. R. 26(b). However, this argument is not compelling because depositions are a regular part of discovery in a collective FLSA. *See Gentrup v. Renovo Servs., LLC*, No. 1:07-CV-430, 2010 WL 6766418 (listing numerous cases in which depositions are taken). Plaintiff does not substantiate his claim that the burden of being deposed likely outweighs the benefit. Further, F. Civ. P. R. 30(a) explicitly states that parties can depose up to ten people without leave of the court. Accordingly, the six depositions sought by Defendants are not burdensome.

Defendants may depose Plaintiffs at this time. The depositions would not be overly burdensome or prejudicial toward potential opt-in plaintiffs.

## C.

Having determined that depositions should proceed, the next inquiry is whether Defendants may depose Paul Westley and opt-in Plaintiffs named in Defendants' motion to compel or instead, only depose a representative sampling.

Plaintiff argues in his response that granting the present motion would preclude the later use of representative discovery. ECF No. 42 at PageID.839. Representative discovery is used in many collective FLSA actions. *See Gentrup*, 2010 WL 6766418 (listing and discussing cases in which representative discovery is used, as well as cases in which it is not.). The theory underpinning the effectiveness of representative discovery is statistical sampling, which seeks to conclude facts about the whole of a group based on a sample of the group. *Rosen v. Reckitt & Colman, Inc.*, No. 91 CIV. 1675 (LMM), 1994 WL 652534, at *3 (S.D.N.Y. Nov. 17, 1994). Statistical sampling requires a sample size large enough to accurately make conclusions about the group from which the sample is selected. *Id.*

The same holds true in collective FLSA cases. While courts have *generally* held that the best course of action is representative discovery using statistical sampling, they have also held that it is not effective in actions that have a small class size. *See Lee*, 2013 WL 4041875 (not permitting representative discovery in a class size of less than fifty opt-in plaintiffs); *Rosen*, 1994 WL 652534 (not permitting representative discovery in a class size of fifty plaintiffs.).

Here, Paul Westley and opt-in Plaintiffs total thirteen as of July 26, 2019. This class is far smaller than classes from *Lee* or *Rosen* in which representative discovery was denied due to the small class size. As the court held in *Rosen*, "Plaintiffs' argument is fatally flawed as a matter of elementary statistics, because the size of the instant class is small." *Rosen*, 1994 WL 652534, at *3. Statistical sampling here would result in only one or two depositions, which would inherently lead to an unrealistic representation of the collective situation of the Plaintiffs.

Accordingly, representative discovery is not appropriate in this case based on the size of the class.

**D.**

F. Civ. P. R. 37(a)(5) requires the court to award expenses, including reasonable attorney's fees, if a motion to compel is granted. However, Fed. R. Civ. P. 37(a)(5) contains exceptions to the rule. It provides that awarding expenses and attorney's fees is not appropriate if "the opposing party's nondisclosure, response or objection was substantially justified." Fed. R. Civ. P. 37(a)(5)(ii). The 6th Circuit has clarified that nondisclosure, response, or objection is substantially justified "if it raises an issue about which 'there is a genuine dispute, or if reasonable people could differ as to the appropriateness of the contested action.'" *Doe v. Lexington-Fayette Urban Cty. Gov't*, 407 F.3d 755, 765 (6th Cir. 2005) (quoting *Pierce v. Underwood*, 487 U.S. 552, 565, 108 S.Ct. 2541, 101 L.Ed.2d 490 (1988)).

Here, Plaintiff has raised a genuine dispute over the issue of representative discovery as well as the appropriateness of deposing opt-in Plaintiffs while the opt-in period is still open. Accordingly, Defendants are not entitled to reasonable expenses relating to their motion to compel.

**IV.**

Accordingly, it is **ORDERD** that Defendants' motion to compel depositions, ECF No. 37, is **GRANTED**.

It is further **ORDERED** that Defendants' request for expenses including attorney's fees is **DENIED.**

It is further **ORDERED** that Defendants may depose Plaintiff and all opt-in Plaintiffs.

Dated: August 13, 2019					s/Thomas L. Ludington
							THOMAS L. LUDINGTON
							United States District Judge